TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00366-CR






Ryan Joseph Sylvia, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT

NO. 64476, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 The trial court convicted appellant Ryan Sylvia of indecency with a child, see Tex.
Penal Code Ann. § 21.11(a)(1) (West 2003), and sentenced him to fifteen years' imprisonment. 
Sylvia appeals, asserting that (1) he was denied effective assistance of counsel and (2) he was
deprived of his constitutional right to counsel when defense counsel left the courtroom while the trial
court viewed videotaped interviews that had been admitted into evidence. We affirm the trial
court's judgment.


BACKGROUND Sylvia was indicted for indecency with a child stemming from allegations by his
step-daughter, K.W., that he forced her to touch his penis with her hands. Sylvia waived his right
to a jury trial and a bench trial was held. K.W., who was eleven years old at the time of trial,
testified that Sylvia put her hand on his penis while Sylvia was giving her a bath. K.W. and her older
sister, R.B., who was in eleventh grade at the time of trial, both testified that they shared a bedroom
and that, on several occasions, Sylvia entered their bedroom wearing only boxer shorts with his penis
exposed. R.B. testified that when she asked Sylvia to "fix himself," he would reply, "My bad, it was
an accident." Shannan Sylvia, who is K.W. and R.B.'s mother and Sylvia's wife, testified that she
does not believe her children's outcries because she does not believe Sylvia would hurt her children. (1)

 After calling several witnesses, including K.W. and Shannan, the State offered State's
exhibits 4 and 5, DVD video recordings of interviews of K.W. and R.B. conducted by the Children's
Advocacy Center (the "CAC interviews"). (2) Defense counsel's only objection to the interviews was
a request that the court require R.B. to testify, as she had not yet taken the stand. After the State
indicated that it intended to call R.B. as a witness, defense counsel stated, "Subject to that, Your
Honor, I have no objections." The trial court admitted the CAC interviews into evidence. The State
then asked that the trial court watch the interviews in open court, at which time the following
exchange took place:

 

 DEFENSE COUNSEL: Your Honor, may we be excused while you do this,
while you watch it?


 COURT: Do you want to do this in open court[?] . . . State said
they wanted to do it in open court.


 . . . .


 COURT: So you all have to stay unless they want me to take a
break and look at it.


 DEFENSE COUNSEL: We said we don't mind if you look at it in chambers
or wherever you want to look at it. We've seen it.


 COURT: State, . . . [y]ou all want me to hear this in open court. 
I'm going to sit here and watch it.


 STATE: We're going to stay here and watch it. Totally up to
him whether he wants to stay here and watch it. He's
the one that wanted it in so I would assume that he
wanted to be in here.


 COURT: So if you want to take a recess, that's fine, before I
begin.


 DEFENSE COUNSEL: I do want to take a recess.


 COURT: Alright.


 STATE: I think it needs to come from his client also, whether
his client wants to be in here when you watch the tape.


 DEFENSE COUNSEL: I think he's already said that he doesn't care whether
he's in here or not; is that right?


 DEFENDANT: Your Honor, It's your decision. If you're allowing me
to step outside and recess, that's fine. I've watched
the interview several times. . . . I'm well aware of the
testimony on those videos.


 COURT: All right. Then you may step outside and come back
in when you're ready and I'll play this whenever it
turns on.


 DEFENSE COUNSEL: We'll be back in a minute, Judge.



The proceeding then went off the record from 10:03 a.m. to 11:43 a.m. When the proceeding came
back on the record, the trial judge announced that, while viewing the CAC interviews on the
computer at the bench, she ran into technical difficulties and had viewed one interview but could not
finish watching the second. The trial court then requested that the State continue with its
presentation of evidence, as it would take time to "swap out" the court's computers. The State
continued by calling additional witnesses, including R.B., a police officer involved in the case, and
K.W.'s therapist. (3) The defense called K.W., Shannan, Shannan's son J.B., and several of Shannan
and Sylvia's neighbors as witnesses.

 In Sylvia's closing argument, defense counsel made several references to both R.B.'s
and K.W.'s CAC interviews. He argued that R.B.'s interview provided evidence that R.B. hated
Sylvia and resented having to babysit her siblings. He further asserted that both K.W.'s and R.B.'s
testimony at trial was inconsistent with their statements in the CAC interviews. He claimed that, "in
the CAC video, both girls said that [Sylvia's exposing himself] had been going on for a long time
but in their testimonies it only happened twice" and that, "in the CAC video [K.W.] said she held
[Sylvia's] private part for 14 minutes. But in her testimony before this court . . . it was down to
. . . five seconds."

 The trial court found Sylvia guilty and sentenced him to fifteen years' imprisonment. (4) 
Sylvia's defense counsel subsequently filed a motion for new trial and notice of appeal. Sylvia then
retained a new attorney, who filed an amended motion for new trial in which he argued that Sylvia
was denied effective assistance of counsel. Sylvia's defense counsel submitted an affidavit in
response to Sylvia's amended motion for new trial, replying to Sylvia's allegations. (5)

 At the hearing on the amended motion, defense counsel testified and was subject to
substantial cross-examination by Sylvia's new counsel. Defense counsel testified that prior to this
criminal trial, he represented Sylvia and Shannan in the related civil parental-rights termination
proceeding, that he was not the first attorney to represent Sylvia and Shannan in that matter, and that
he obtained the CAC interviews from Sylvia, who had received them from one of his prior attorneys. 
The trial court also stated at the hearing that she did not recall any conversation occurring during the
period off the record except a discussion of the technical difficulties with her computer. Following
the hearing, the trial court denied Sylvia's amended motion.

 Sylvia now appeals, claiming (1) that defense counsel provided ineffective assistance
for leaving the courtroom during the viewing of the CAC interviews, failing to object to the
admission of the CAC interviews, and failing to realize the limited scope of the running objection
made during the testimony of K.W.'s therapist, and (2) that his constitutional right to counsel was
violated by defense counsel when defense counsel left the courtroom, and by the trial court when the
trial court failed to obtain a waiver of Sylvia's right to counsel before permitting defense
counsel's exit.



STANDARD OF REVIEW

 Though Sylvia does not directly frame his appeal as an appeal from the trial court's
denial of his amended motion for new trial, because the trial court has already denied the merits of
his ineffective assistance claim, we must consider his arguments in light of that ruling. We review
a trial court's denial of a motion for new trial for an abuse of discretion. Charles v. State,
146 S.W.3d 204, 208 (Tex. Crim. App. 2004). Accordingly, when analyzing the trial court's
decision to deny a new trial based on ineffective assistance of counsel, we view the relevant
legal standards through the prism of an abuse-of-discretion standard. See Ramirez v. State,
301 S.W.3d 410, 415 (Tex. App.--Austin 2009, no pet.). We do not substitute our judgment for that
of the trial court; rather we decide whether the trial court's decision was arbitrary or unreasonable. 
Charles, 146 S.W.3d at 208. We must view the evidence in the light most favorable to the trial
court's ruling and presume that all reasonable factual findings that could have been made against the
losing party were so made. Id. Thus, a trial court abuses its discretion in denying a motion for new
trial only when no reasonable view of the record could support the trial court's ruling. Id.

 To prevail on a claim of ineffective assistance of counsel, a defendant must show by
a preponderance of the evidence that (1) counsel's representation fell below an objective standard
of reasonableness under the prevailing professional norms, and (2) the deficient performance
prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Hernandez v. State,
726 S.W.2d 53, 57 (Tex. Crim. App. 1986). An appellant's failure to satisfy one prong of the
Strickland test negates a court's need to consider the other prong. Garcia v. State, 57 S.W.3d 436,
440 (Tex. Crim. App. 2001) (citing Strickland, 466 U.S. at 697). To prove prejudice, a defendant
must show that there is a reasonable probability, or a probability sufficient to undermine confidence
in the outcome, that the result of the proceeding would have been different. Strickland, 466 U.S. at
687. "It is not enough for the defendant to show that the errors had some conceivable effect on the
outcome of the proceeding." Id. at 693. Rather, he must show that "there is a reasonable probability
that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

 An appellate court must make a "strong presumption that counsel's performance fell
within the wide range of reasonably professional assistance." Robertson v. State, 187 S.W.3d 475,
483 (Tex. Crim. App. 2006) (citing Strickland, 466 U.S. at 689). In order for an appellate court to
find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial
record; the court must not engage in retroactive speculation. Thompson v. State, 9 S.W.3d 808, 813
(Tex. Crim. App. 1999). When direct evidence of ineffectiveness is not available, we will assume
that counsel had a strategy if any reasonably sound strategic motivation can be imagined. Garcia,
57 S.W.3d at 440. The record on direct appeal will only in rare circumstances be adequate to show
that counsel's performance fell below an objectively reasonable standard of performance. See
Andrews v. State, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005) (indicating that claims of ineffective
assistance of counsel are normally best left for habeas corpus proceedings); see also Bone v. State,
77 S.W.3d 828, 833 (Tex. Crim. App. 2002) ("Under normal circumstances, the record on direct
appeal will not be sufficient to show that counsel's representation was so deficient and so lacking
in tactical or strategic decision making as to overcome the presumption that counsel's conduct was
reasonable and professional."). The record in this case, however, is more developed on direct appeal
because of the hearing held on Sylvia's amended motion for new trial. The hearing featured
testimony of defense counsel, as well as his affidavit and a statement by the trial court.


DISCUSSION

 In his first point on appeal, Sylvia argues that defense counsel rendered ineffective
assistance of counsel by (1) leaving the courtroom with Sylvia while the trial court watched the CAC
interviews, (2) failing to object to the admission of the CAC interviews, and (3) failing to realize that
his running objection to the testimony of K.W.'s therapist did not extend to R.B.'s claims of abuse.

 Sylvia first alleges that his defense counsel provided ineffective assistance by
excusing himself and Sylvia from the courtroom while the trial court viewed the CAC interviews. 
Sylvia argues that the record "affords no great confidence that nothing happened as to which
Appellant wouldn't have been better protected had he and his attorney been present in the courtroom
when the tapes were being played." Lack of confidence, however, is not the standard. Instead, it was
Sylvia's burden to prove that the outcome of the proceeding would probably have been different had
defense counsel remained in the courtroom. See Strickland, 466 U.S. at 687.

 The record reflects that defense counsel agreed during a pretrial hearing that the
interviews would be entered into evidence. At the time defense counsel requested a recess, he
indicated that he "didn't mind" if the court looked at the interviews "in chambers or wherever you
want to look at it. We've seen it." Sylvia, when asked, agreed, stating, "If you're allowing me to
step outside and recess, that's fine. I've watched the interview several times. . . . I'm well aware of
the testimony on those videos." The proceedings then went off the record for one hour and forty
minutes. The record does not indicate, however, for what portion of that time defense counsel and
Sylvia were out of the courtroom. Further, Sylvia presented no evidence, either in his amended
motion for new trial or at the hearing on that motion, that defense counsel's absence prejudiced
Sylvia in any discernible way. At the hearing on the amended motion for new trial, the trial court
represented that the only discussion that occurred during the period off the record was in response
to the technical difficulties while viewing the interviews. The record contains no indication that the
State and trial court exchanged any substantive discussion during defense counsel's absence. On this
record, we cannot say that the trial court abused its discretion in failing to find that defense counsel's
leaving the courtroom was ineffective assistance requiring a new trial. Id.

 Sylvia next argues that defense counsel's failure to object to the admission of the
CAC interviews, other than his request that R.B. testify, constituted ineffective assistance of counsel. 
An allegation of ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness. Bone, 77 S.W.3d at 835. Sylvia has provided
no evidence or argument to rebut the strong presumption that defense counsel's actions were within
the wide range of reasonably professional assistance. Robertson, 187 S.W.3d at 483.

 Instead, the record suggests that defense counsel intended that the CAC interviews
be admitted into evidence for the purpose of impeaching K.W.'s and R.B.'s testimony at trial. Not
only did counsel enter into a pretrial agreement that the interviews be admitted--indicating that
defense counsel's failure to object was a conscious strategy rather than an oversight--he also
referred to the interviews in his closing argument, identifying inconsistencies between K.W.'s and
R.B.'s testimony at trial and their statements during the videotaped interviews. At the hearing on
the amended motion for new trial, defense counsel testified that K.W. and R.B. came across as
credible witnesses when they testified at the civil termination trial. He further testified that he took
their credibility into consideration when preparing for the criminal trial. Because admitting the
interviews for the purpose of impeachment constitutes a reasonably sound strategic motivation, the
trial court did not abuse its discretion in concluding that defense counsel's failure to object was
reasonably effective assistance of counsel.

 Sylvia next argues that defense counsel provided ineffective assistance by failing to
realize that the running objection he requested during the testimony of K.W.'s therapist constituted
an objection only to K.W.'s claims against Sylvia, and did not extend to allegations by R.B. Defense
counsel made a running objection during the testimony of K.W.'s therapist to "any opinion that
[K.W.'s therapist] has that [K.W.] was sexually abused." The record contains no indication that
defense counsel misinterpreted this running objection to believe that it covered sexual-abuse claims
by R.B. or that defense counsel intended the objection to have such a broad scope. Further, the
therapist made no mention of R.B. during her testimony. Thus, even had Sylvia proven that defense
counsel erred, it did not prejudice Sylvia's defense.

 Within this running-objection argument, Sylvia further challenges defense counsel's
general failure to object to the admission of extraneous-offense testimony. Sylvia claims that
defense counsel should have objected to both Shannan's testimony at a bond-reduction hearing
stating that Sylvia had physically assaulted a neighbor and the trial testimony of a police officer and
a CPS investigator stating that R.B. made allegations against Sylvia similar to those made by K.W. (6) 
Sylvia does little more, however, than list items of testimony that, in hindsight, he believes should
have been objected to. Additionally, Sylvia fails to prove that the trial's outcome would have been
different without this evidence. Even without any evidence of extraneous acts, the trial court heard
testimony from K.W. that Sylvia made her touch his penis and that he exposed himself in her
presence on more than one occasion. Given this testimony, we cannot conclude that the trial court
abused its discretion by finding that Sylvia did not prove the Strickland elements. 466 U.S. at 687. 

 To the extent Sylvia argues that defense counsel was ineffective based on "other
failures . . . denominated" in his brief, we conclude that these arguments were waived for inadequate
briefing. See Tex. R. App. P. 38.1(i) (appellant's brief must state concisely all issues or points
presented for review). Sylvia's first issue is overruled.

 In his second issue on appeal, Sylvia argues that defense counsel's leaving the
courtroom while the trial court viewed the CAC interviews constituted a constructive denial of
Sylvia's Sixth and Fourteenth Amendment rights to counsel. See U.S. Const. amends. VI, XIV. 
Similarly, Sylvia claims in his third issue on appeal that the trial court violated his constitutional
right to counsel by permitting defense counsel to excuse himself without first obtaining a waiver of
Sylvia's right to counsel. In order to prove complete denial of the right to counsel and bypass the
Strickland prejudice test, as Sylvia attempts to do here, a defendant must show that counsel was
absent during a "critical stage" of the proceeding. United States v. Cronic, 466 U.S. 648, 659 (1984). 

 Sylvia presents no argument as to why the viewing of the CAC interviews constituted
a "critical stage" of the proceedings. Further, while courts "have struggled to define the 'critical'
stages of trial," United States v. Russell, 205 F.3d 768, 771 (5th Cir. 2000), the present facts compare
unfavorably to those instances when counsel have been considered absent at critical times. For
example, in Belcher v. State, 93 S.W.3d 593, 599 (Tex. App.--Houston [14th Dist.] 2002, pet.
dism'd), a stage when the trial court repeatedly attempted to engage the defense in a dialogue on its
motion for new trial, through which counsel sat as silent and unresponsive as if he were absent
entirely, was held to be critical. And in Russell, an attorney missed two full days of witness
testimony concerning the conspiracy in which his client allegedly took part. In reversing that
conviction, the Fifth Circuit acknowledged that only "a denial of such significance that it makes the
adversary process itself unreliable" along with "surrounding circumstances [that] justify a
presumption of ineffectiveness" warrant a decision to require no showing of prejudice. Russell,
205 F.3d at 771.

 The differences between these cases and Sylvia's are significant. For one thing, before
the court commenced watching the CAC interview tapes, they had already been admitted as evidence
pursuant to an agreement sought by Sylvia. No evidence was therefore taken, nor was any exchange
between the judge and counsel for either side attempted, outside the presence of Sylvia's counsel.
The State is right to conclude that the court's chosen manner of watching the tapes was no more a
critical stage of trial than if it had decided to review them alone in chambers at some other point in
time, for which Sylvia and his counsel could certainly allege no need to be present.

 As a consequence, Sylvia's deprivation of counsel claims are subject to the Strickland
analysis for prejudice. Because we have concluded that Sylvia failed to prove that defense counsel's
absence from the courtroom prejudiced his defense, Sylvia's second and third issues are overruled.


CONCLUSION

 Having overruled all of Sylvia's issues on appeal, we affirm the trial court's
judgment.


 ______________________________________

 Diane M. Henson, Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed

Filed: September 29, 2011

Do Not Publish
1. To avoid confusion, we will refer to Shannan Sylvia by her first name.
2. During a pretrial hearing, Sylvia's defense counsel represented to the trial court that the
parties had "agreed that the CAC interviews can be played at trial." 
3. During the testimony of K.W.'s therapist, defense counsel made a running objection to
"any opinion . . . that [K.W.] was sexually abused."
4. Sylvia does not challenge the sufficiency of the evidence supporting this conviction.
5. For the purpose of this opinion, "defense counsel" has and will continue to refer only to
Sylvia's counsel at trial, and not to counsel who represented him at the hearing on his amended
motion for new trial and on appeal.
6. Sylvia also claims that defense counsel allowed the court to learn about an incident
involving Sylvia's younger sister for which Sylvia served time in juvenile detention from Shannan's
testimony at the bond-reduction hearing. He fails to explain how testimony at a bond-reduction
hearing could be the basis for reversing his guilt/innocence judgment.


 Sylvia also challenges defense counsel's failure to object to R.B.'s statement during her CAC
interview that Sylvia had been in "juvey."