# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00366-CR

**Ryan Joseph Sylvia, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
### NO. 64476, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The trial court convicted appellant Ryan Sylvia of indecency with a child, *see* Tex. Penal Code Ann. § 21.11(a)(1) (West 2003), and sentenced him to fifteen years' imprisonment. Sylvia appeals, asserting that (1) he was denied effective assistance of counsel and (2) he was deprived of his constitutional right to counsel when defense counsel left the courtroom while the trial court viewed videotaped interviews that had been admitted into evidence. We affirm the trial court's judgment.

## BACKGROUND

Sylvia was indicted for indecency with a child stemming from allegations by his step-daughter, K.W., that he forced her to touch his penis with her hands. Sylvia waived his right to a jury trial and a bench trial was held. K.W., who was eleven years old at the time of trial, testified that Sylvia put her hand on his penis while Sylvia was giving her a bath. K.W. and her older

sister, R.B., who was in eleventh grade at the time of trial, both testified that they shared a bedroom and that, on several occasions, Sylvia entered their bedroom wearing only boxer shorts with his penis exposed. R.B. testified that when she asked Sylvia to "fix himself," he would reply, "My bad, it was an accident." Shannan Sylvia, who is K.W. and R.B.'s mother and Sylvia's wife, testified that she does not believe her children's outcries because she does not believe Sylvia would hurt her children.[1]

After calling several witnesses, including K.W. and Shannan, the State offered State's exhibits 4 and 5, DVD video recordings of interviews of K.W. and R.B. conducted by the Children's Advocacy Center (the "CAC interviews").[2] Defense counsel's only objection to the interviews was a request that the court require R.B. to testify, as she had not yet taken the stand. After the State indicated that it intended to call R.B. as a witness, defense counsel stated, "Subject to that, Your Honor, I have no objections." The trial court admitted the CAC interviews into evidence. The State then asked that the trial court watch the interviews in open court, at which time the following exchange took place:

| DEFENSE COUNSEL: | Your Honor, may we be excused while you do this, while you watch it? |
| COURT: | Do you want to do this in open court[?] . . . State said they wanted to do it in open court. |
| . . . . | |
| COURT: | So you all have to stay unless they want me to take a break and look at it. |

_____

[1] To avoid confusion, we will refer to Shannan Sylvia by her first name.

[2] During a pretrial hearing, Sylvia's defense counsel represented to the trial court that the parties had "agreed that the CAC interviews can be played at trial."

2

DEFENSE COUNSEL:      We said we don't mind if you look at it in chambers or wherever you want to look at it. We've seen it.

COURT:      State, . . . [y]ou all want me to hear this in open court. I'm going to sit here and watch it.

STATE:      We're going to stay here and watch it. Totally up to him whether he wants to stay here and watch it. He's the one that wanted it in so I would assume that he wanted to be in here.

COURT:      So if you want to take a recess, that's fine, before I begin.

DEFENSE COUNSEL:      I do want to take a recess.

COURT:      Alright.

STATE:      I think it needs to come from his client also, whether his client wants to be in here when you watch the tape.

DEFENSE COUNSEL:      I think he's already said that he doesn't care whether he's in here or not; is that right?

DEFENDANT:      Your Honor, It's your decision. If you're allowing me to step outside and recess, that's fine. I've watched the interview several times. . . . I'm well aware of the testimony on those videos.

COURT:      All right. Then you may step outside and come back in when you're ready and I'll play this whenever it turns on.

DEFENSE COUNSEL:      We'll be back in a minute, Judge.

The proceeding then went off the record from 10:03 a.m. to 11:43 a.m. When the proceeding came back on the record, the trial judge announced that, while viewing the CAC interviews on the computer at the bench, she ran into technical difficulties and had viewed one interview but could not

3

finish watching the second. The trial court then requested that the State continue with its presentation of evidence, as it would take time to "swap out" the court's computers. The State continued by calling additional witnesses, including R.B., a police officer involved in the case, and K.W.'s therapist.[3] The defense called K.W., Shannan, Shannan's son J.B., and several of Shannan and Sylvia's neighbors as witnesses.

In Sylvia's closing argument, defense counsel made several references to both R.B.'s and K.W.'s CAC interviews. He argued that R.B.'s interview provided evidence that R.B. hated Sylvia and resented having to babysit her siblings. He further asserted that both K.W.'s and R.B.'s testimony at trial was inconsistent with their statements in the CAC interviews. He claimed that, "in the CAC video, both girls said that [Sylvia's exposing himself] had been going on for a long time but in their testimonies it only happened twice" and that, "in the CAC video [K.W.] said she held [Sylvia's] private part for 14 minutes. But in her testimony before this court . . . it was down to . . . five seconds."

The trial court found Sylvia guilty and sentenced him to fifteen years' imprisonment.[4] Sylvia's defense counsel subsequently filed a motion for new trial and notice of appeal. Sylvia then retained a new attorney, who filed an amended motion for new trial in which he argued that Sylvia

---

[3] During the testimony of K.W.'s therapist, defense counsel made a running objection to "any opinion . . . that [K.W.] was sexually abused."

[4] Sylvia does not challenge the sufficiency of the evidence supporting this conviction.

was denied effective assistance of counsel. Sylvia's defense counsel submitted an affidavit in response to Sylvia's amended motion for new trial, replying to Sylvia's allegations.[5]

At the hearing on the amended motion, defense counsel testified and was subject to substantial cross-examination by Sylvia's new counsel. Defense counsel testified that prior to this criminal trial, he represented Sylvia and Shannan in the related civil parental-rights termination proceeding, that he was not the first attorney to represent Sylvia and Shannan in that matter, and that he obtained the CAC interviews from Sylvia, who had received them from one of his prior attorneys. The trial court also stated at the hearing that she did not recall any conversation occurring during the period off the record except a discussion of the technical difficulties with her computer. Following the hearing, the trial court denied Sylvia's amended motion.

Sylvia now appeals, claiming (1) that defense counsel provided ineffective assistance for leaving the courtroom during the viewing of the CAC interviews, failing to object to the admission of the CAC interviews, and failing to realize the limited scope of the running objection made during the testimony of K.W.'s therapist, and (2) that his constitutional right to counsel was violated by defense counsel when defense counsel left the courtroom, and by the trial court when the trial court failed to obtain a waiver of Sylvia's right to counsel before permitting defense counsel's exit.

---

[5] For the purpose of this opinion, "defense counsel" has and will continue to refer only to Sylvia's counsel at trial, and not to counsel who represented him at the hearing on his amended motion for new trial and on appeal.

## STANDARD OF REVIEW

Though Sylvia does not directly frame his appeal as an appeal from the trial court's denial of his amended motion for new trial, because the trial court has already denied the merits of his ineffective assistance claim, we must consider his arguments in light of that ruling. We review a trial court's denial of a motion for new trial for an abuse of discretion. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004). Accordingly, when analyzing the trial court's decision to deny a new trial based on ineffective assistance of counsel, we view the relevant legal standards through the prism of an abuse-of-discretion standard. *See Ramirez v. State*, 301 S.W.3d 410, 415 (Tex. App.—Austin 2009, no pet.). We do not substitute our judgment for that of the trial court; rather we decide whether the trial court's decision was arbitrary or unreasonable. *Charles*, 146 S.W.3d at 208. We must view the evidence in the light most favorable to the trial court's ruling and presume that all reasonable factual findings that could have been made against the losing party were so made. *Id.* Thus, a trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Id.*

To prevail on a claim of ineffective assistance of counsel, a defendant must show by a preponderance of the evidence that (1) counsel's representation fell below an objective standard of reasonableness under the prevailing professional norms, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (citing *Strickland*, 466 U.S. at 697). To prove prejudice, a defendant

6

must show that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Rather, he must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

An appellate court must make a "strong presumption that counsel's performance fell within the wide range of reasonably professional assistance." *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006) (citing *Strickland*, 466 U.S. at 689). In order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retroactive speculation. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). When direct evidence of ineffectiveness is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined. *Garcia*, 57 S.W.3d at 440. The record on direct appeal will only in rare circumstances be adequate to show that counsel's performance fell below an objectively reasonable standard of performance. *See Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005) (indicating that claims of ineffective assistance of counsel are normally best left for habeas corpus proceedings); *see also Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002) ("Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision making as to overcome the presumption that counsel's conduct was reasonable and professional."). The record in this case, however, is more developed on direct appeal

7

because of the hearing held on Sylvia's amended motion for new trial. The hearing featured testimony of defense counsel, as well as his affidavit and a statement by the trial court.

**DISCUSSION**

In his first point on appeal, Sylvia argues that defense counsel rendered ineffective assistance of counsel by (1) leaving the courtroom with Sylvia while the trial court watched the CAC interviews, (2) failing to object to the admission of the CAC interviews, and (3) failing to realize that his running objection to the testimony of K.W.'s therapist did not extend to R.B.'s claims of abuse.

Sylvia first alleges that his defense counsel provided ineffective assistance by excusing himself and Sylvia from the courtroom while the trial court viewed the CAC interviews. Sylvia argues that the record "affords no great confidence that nothing happened as to which Appellant wouldn't have been better protected had he and his attorney been present in the courtroom when the tapes were being played." Lack of confidence, however, is not the standard. Instead, it was Sylvia's burden to prove that the outcome of the proceeding would probably have been different had defense counsel remained in the courtroom. *See Strickland*, 466 U.S. at 687.

The record reflects that defense counsel agreed during a pretrial hearing that the interviews would be entered into evidence. At the time defense counsel requested a recess, he indicated that he "didn't mind" if the court looked at the interviews "in chambers or wherever you want to look at it. We've seen it." Sylvia, when asked, agreed, stating, "If you're allowing me to step outside and recess, that's fine. I've watched the interview several times. . . . I'm well aware of the testimony on those videos." The proceedings then went off the record for one hour and forty minutes. The record does not indicate, however, for what portion of that time defense counsel and

8

Sylvia were out of the courtroom. Further, Sylvia presented no evidence, either in his amended motion for new trial or at the hearing on that motion, that defense counsel's absence prejudiced Sylvia in any discernible way. At the hearing on the amended motion for new trial, the trial court represented that the only discussion that occurred during the period off the record was in response to the technical difficulties while viewing the interviews. The record contains no indication that the State and trial court exchanged any substantive discussion during defense counsel's absence. On this record, we cannot say that the trial court abused its discretion in failing to find that defense counsel's leaving the courtroom was ineffective assistance requiring a new trial. *Id.*

Sylvia next argues that defense counsel's failure to object to the admission of the CAC interviews, other than his request that R.B. testify, constituted ineffective assistance of counsel. An allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Bone*, 77 S.W.3d at 835. Sylvia has provided no evidence or argument to rebut the strong presumption that defense counsel's actions were within the wide range of reasonably professional assistance. *Robertson*, 187 S.W.3d at 483.

Instead, the record suggests that defense counsel intended that the CAC interviews be admitted into evidence for the purpose of impeaching K.W.'s and R.B.'s testimony at trial. Not only did counsel enter into a pretrial agreement that the interviews be admitted—indicating that defense counsel's failure to object was a conscious strategy rather than an oversight—he also referred to the interviews in his closing argument, identifying inconsistencies between K.W.'s and R.B.'s testimony at trial and their statements during the videotaped interviews. At the hearing on the amended motion for new trial, defense counsel testified that K.W. and R.B. came across as

credible witnesses when they testified at the civil termination trial. He further testified that he took their credibility into consideration when preparing for the criminal trial. Because admitting the interviews for the purpose of impeachment constitutes a reasonably sound strategic motivation, the trial court did not abuse its discretion in concluding that defense counsel's failure to object was reasonably effective assistance of counsel.

Sylvia next argues that defense counsel provided ineffective assistance by failing to realize that the running objection he requested during the testimony of K.W.'s therapist constituted an objection only to K.W.'s claims against Sylvia, and did not extend to allegations by R.B. Defense counsel made a running objection during the testimony of K.W.'s therapist to "any opinion that [K.W.'s therapist] has that [K.W.] was sexually abused." The record contains no indication that defense counsel misinterpreted this running objection to believe that it covered sexual-abuse claims by R.B. or that defense counsel intended the objection to have such a broad scope. Further, the therapist made no mention of R.B. during her testimony. Thus, even had Sylvia proven that defense counsel erred, it did not prejudice Sylvia's defense.

Within this running-objection argument, Sylvia further challenges defense counsel's general failure to object to the admission of extraneous-offense testimony. Sylvia claims that defense counsel should have objected to both Shannan's testimony at a bond-reduction hearing stating that Sylvia had physically assaulted a neighbor and the trial testimony of a police officer and a CPS investigator stating that R.B. made allegations against Sylvia similar to those made by K.W.[6]

---

[6] Sylvia also claims that defense counsel allowed the court to learn about an incident involving Sylvia's younger sister for which Sylvia served time in juvenile detention from Shannan's testimony at the bond-reduction hearing. He fails to explain how testimony at a bond-reduction

Sylvia does little more, however, than list items of testimony that, in hindsight, he believes should have been objected to. Additionally, Sylvia fails to prove that the trial's outcome would have been different without this evidence. Even without any evidence of extraneous acts, the trial court heard testimony from K.W. that Sylvia made her touch his penis and that he exposed himself in her presence on more than one occasion. Given this testimony, we cannot conclude that the trial court abused its discretion by finding that Sylvia did not prove the *Strickland* elements. 466 U.S. at 687.

To the extent Sylvia argues that defense counsel was ineffective based on "other failures . . . denominated" in his brief, we conclude that these arguments were waived for inadequate briefing. *See* Tex. R. App. P. 38.1(i) (appellant's brief must state concisely all issues or points presented for review). Sylvia's first issue is overruled.

In his second issue on appeal, Sylvia argues that defense counsel's leaving the courtroom while the trial court viewed the CAC interviews constituted a constructive denial of Sylvia's Sixth and Fourteenth Amendment rights to counsel. *See* U.S. Const. amends. VI, XIV. Similarly, Sylvia claims in his third issue on appeal that the trial court violated his constitutional right to counsel by permitting defense counsel to excuse himself without first obtaining a waiver of Sylvia's right to counsel. In order to prove complete denial of the right to counsel and bypass the *Strickland* prejudice test, as Sylvia attempts to do here, a defendant must show that counsel was absent during a "critical stage" of the proceeding. *United States v. Cronic*, 466 U.S. 648, 659 (1984).

---

hearing could be the basis for reversing his guilt/innocence judgment.

Sylvia also challenges defense counsel's failure to object to R.B.'s statement during her CAC interview that Sylvia had been in "juvey."

Sylvia presents no argument as to why the viewing of the CAC interviews constituted a "critical stage" of the proceedings. Further, while courts "have struggled to define the 'critical' stages of trial," *United States v. Russell*, 205 F.3d 768, 771 (5th Cir. 2000), the present facts compare unfavorably to those instances when counsel have been considered absent at critical times. For example, in *Belcher v. State*, 93 S.W.3d 593, 599 (Tex. App.—Houston [14th Dist.] 2002, pet. dism'd), a stage when the trial court repeatedly attempted to engage the defense in a dialogue on its motion for new trial, through which counsel sat as silent and unresponsive as if he were absent entirely, was held to be critical. And in *Russell*, an attorney missed two full days of witness testimony concerning the conspiracy in which his client allegedly took part. In reversing that conviction, the Fifth Circuit acknowledged that only "a denial of such significance that it makes the adversary process itself unreliable" along with "surrounding circumstances [that] justify a presumption of ineffectiveness" warrant a decision to require no showing of prejudice. *Russell*, 205 F.3d at 771.

The differences between these cases and Sylvia's are significant. For one thing, before the court commenced watching the CAC interview tapes, they had already been admitted as evidence pursuant to an agreement sought by Sylvia. No evidence was therefore taken, nor was any exchange between the judge and counsel for either side attempted, outside the presence of Sylvia's counsel. The State is right to conclude that the court's chosen manner of watching the tapes was no more a critical stage of trial than if it had decided to review them alone in chambers at some other point in time, for which Sylvia and his counsel could certainly allege no need to be present.

12

As a consequence, Sylvia's deprivation of counsel claims are subject to the *Strickland* analysis for prejudice. Because we have concluded that Sylvia failed to prove that defense counsel's absence from the courtroom prejudiced his defense, Sylvia's second and third issues are overruled.

## CONCLUSION

Having overruled all of Sylvia's issues on appeal, we affirm the trial court's judgment.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed

Filed:   September 29, 2011

Do Not Publish