UNITED STATES COURT OF APPEALS
For the Fifth Circuit

_____

No. 98-50804
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

WILLIAM HOBERT RUSSELL, A.K.A "EL INDIO,"
A.K.A WILLIAM HOBART RUSSELL

Defendant-Appellant.

_____

Appeal from the United States District
Court for the Western District of Texas

_____

March 1, 2000
Before POLITZ and DAVIS, Circuit Judges and RESTANI, Judge.*

JANE A. RESTANI, Judge:

This is an appeal from the district court's denial of

defendant Russell's motion to vacate sentence under 28 U.S.C.A. §

2255 (West. Supp. 1999). Russell v. United States, No. EP-98-CA-

152-H (EP-94-CR-59-H), (W.D. Tex. June 16, 1998)("Russell I").

Russell makes various arguments, all arising from his counsel's

absence during two days of trial. After reviewing the evidence,

the court concludes that Russell was deprived of his right to

counsel during a critical stage of trial.

**I.**

_____

* Judge, U.S. Court of International Trade, sitting by
designation.

In a superseding indictment Russell was charged with conspiring to possess marijuana and cocaine with intent to distribute and for conspiring to launder money that was the proceeds of drug transactions. Id. at 2. The district court tried seventeen defendants together, including Russell, in October 1994. Id. The jury found Russell guilty on the first count of the indictment (conspiracy to possess with the intent to distribute) in violation of 21 U.S.C. §§ 841(a)(1) & 846 (1994) and the eighth count of the indictment (conspiracy to launder money) in violation of 18 U.S.C. § 1956(a)(1)(A)(i) (1994). United States v. Pena-Rodriquez, 110 F.3d 1120, 1122 (5th Cir. 1997).

On direct appeal, this court affirmed Russell's conviction on April 10, 1997 and denied rehearing on May 22, 1997. Id. at 1120. On May 7, 1998, Russell filed a motion to vacate sentence pursuant to 28 U.S.C. § 2255. Russell I, at 1. The district court denied the motion. Id. at 4. The district court also denied Russell's motion for reconsideration. Russell v. United States, No. EP-98-CA-152-H, EP-94-CR-59-H(29), at 4 (W.D. Tex. Aug. 10, 1998) ("Russell II").

Russell argued that: (1) he was denied the right to counsel for two consecutive days of trial; (2) counsel with a conflict-of-interest represented him during his counsel's absence; (3) the district court erred in determining that the substitution of

2

counsel had no legal significance; and (4) that he had been deprived of his choice of counsel. Russell I at 2-3; Russell II, at 4.

Russell bases all of his arguments on events that occurred several days into the trial. Russell I, at 2. On October 26, 1994, Russell's attorney, Bernard Panetta, fell ill and fainted in the lobby outside the courtroom. Id. Panetta was taken to a hospital by ambulance. Id. Another defense attorney, Carlos Villa, representing co-defendant Robert Alan Dickinson, informed the court that Panetta had consented to the continuance of contempt proceedings against the witness Truelove, requested that no witnesses against Russell be presented and then announced that he would 'sit in' for Panetta. Id. at 2-3. The district court instructed the government not to call any witness relevant to Russell until such time as Panetta was able to return to court. Id. at 3. The district court did not speak to Russell or ask for his consent to the substitution, although Villa stated that he had the client's (Russell's) permission to represent him that one day.[1] On October 28th, Panetta returned to court and continued

---

[1] The exact exchange between the district court and Villa is as follows:
"THE COURT: Well, this may all be somewhat academic, but I'm led to believe that Mr. Panetta has taken ill, so we don't want to bring a witness in that's relevant to his client until we find out if he's going to recover.
MR. VILLA: Your Honor, I've spoken with Mr. Panetta right before they took him in the ambulance, and he told me that if you want to go through the procedure regarding Mr. Truelove, holding
(continued...)

3

to vigorously represent Russell. Russell I, at 3. Panetta did not question anything that took place in his absence.

During Panetta's absence, as directed by the district court, the government did not present any testimony that directly implicated Russell. The government did present, however, the testimony of eighteen witnesses and introduced numerous exhibits relating to the conspiracy. The evidence implicated several of Russell's co-conspirators in the money laundering scheme: Ruben Gallegos ("Gallegos"), Avelino Gil Terrazas ("Gil") and Eduardo Gonzalez Quirarte ("Quirarte"). Specifically, the evidence elaborated on the co-conspirators heavy involvement in the importation of marijuana through the use of false compartments in the fuel tanks of trucks. The government also presented evidence detailing how and where money was paid and counted. On the last half day of Panetta's absence, the government presented evidence

---

[1](...continued)
him in contempt or whatever that process is going to take that he has no objection to proceeding with that.

As far as any other witnesses against him, we would ask the Government not to call them at this stage. As far as also Mr. Panetta, Your Honor, and I'm jumping to another area, the client has given me permission for today only, to sit in for him.

THE COURT: I understand that, but whether permission or not, whether today only or not, whether anything else, it would be better not to call witnesses whose testimony relates directly to Mr. Panetta's client until we find out what his status is going to be.

MR. VILLA: Yes, sir.

THE COURT: It may be that he'll be able to return and again represent his client. It may be that he can't. And if he can't, then other action has to be taken to protect his client's rights."

4

of Avelino and Norma Gil's attempts to launder money through the purchase of various properties using cash.

On the day prior to Panetta's absence, the government had presented the testimony of Felipe Madrid, the key witness against Russell. Madrid testified about Russell's management of the distribution of marijuana operations and involvement in providing Madrid with funds. Thus, the presentation of evidence flowed directly from Russell's role in the money laundering conspiracy to the roles of Gallegos, Gil and Quirarte in the same money laundering conspiracy and the overall conspiracy to import and distribute marijuana.

## II.

After denying Russell's motion to vacate sentence, the district court issued an amended certificate of appealability as required by 28 U.S.C.A. §2253(c)(1)(B) (West Supp. 1999). This court has jurisdiction pursuant to 28 U.S.C. § 1291 (1994). The court reviews factual findings for clear error and questions of law *de novo*. United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996); United States v. Seyfert, 67 F.3d 544, 546 (5th Cir. 1995).

Russell argues that he was without counsel on both October 26th and October 27th and was therefore denied his Sixth Amendment right to counsel. He contends that the district court denied him the right to counsel by failing to apprize him of his

5

rights and refusing to ask him whether he wished to proceed with Villa, other substitute counsel, or if a continuance would be in order. On October 26th, the court merely required that the government not call any witness that would <u>directly</u> relate to Russell. It is unclear whether the district court accepted Villa's attempt to 'stand in' for Panetta.

In any event, it is disturbing that the district court did not advise Russell of his rights in this situation. The right to counsel must be waived affirmatively and such waiver must be understandingly, intelligently, and voluntarily done. <u>Ford v. Wainwright</u>, 526 F.2d 919, 921 (5th Cir. 1976). A waiver cannot be established through presumed acquiescence. <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464 (1938)(footnotes omitted), <u>overruled on other grounds by</u> <u>Edwards v. Arizona</u>, 451 U.S. 477 (1981). Furthermore, it is the "responsibility, obligation and duty of the Trial Judge" to make this "serious determination of waiver," and "such determination should appear plainly on the record." <u>Ford</u>, 526 F.2d at 922. The trial court should assist in protecting the defendant's rights, at a minimum, by insuring that the defendant is aware of and understands the right to have counsel present, by explaining the meaning and consequence of waiving the right to counsel or of accepting substitute counsel and making sure that such waiver or acceptance of alternate counsel is on the record. See <u>Siverson v. O'Leary</u>, 764 F.2d 1208, 1217 (7th Cir. 1985).

In this case, the district court did not confer with Russell on or off the record, did not apprize him of his rights and did not ask him at any point what he would like to do about his attorney's unexpected absence. Thus, Russell was without counsel and did not waive his right to counsel from the morning of October 26th until Panetta returned to trial on October 28th.

In light of these facts, Russell urges this court to adopt a bright line rule that the taking of any evidence at trial in the absence of counsel is prejudicial *per se* under United States v. Cronic. 466 U.S. 648 (1984). Cronic does not so hold and we decline to fashion such a rule.

Cronic holds that because the guiding of hand of counsel is essential, "a trial is unfair if the accused is denied counsel at a critical stage of his trial." Cronic, 466 U.S. at 658 (emphasis added). Therefore, "no specific showing of prejudice was required." Id. at 659 (citing Davis v. Alaska, 415 U.S. 308, 318 (1974)). Cronic does not provide significant guidance on which parts of trial are considered "critical," but does provide some meaningful abstract standards by which to judge if the absence of counsel is at a critical stage of trial. First, there must be a denial of such significance that it makes the adversary process itself unreliable. Id. Second, the Cronic court makes clear that "only when surrounding circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be

7

sufficient without inquiry into counsel's actual performance at trial." Id. at 662 (emphasis added)(footnote omitted).

Since Cronic was announced, various Courts of Appeals have struggled to define the "critical" stages of trial during which the absence of counsel creates a presumption of prejudice. See e.g., Hernandez v. United States, No. 97-2648, 2000 WL 123937, at *3 (2d Cir. Feb. 03, 2000) (finding that counsel's failure to prosecute direct appeal of conviction is prejudicial *per se*); United States v. Lampton, 158 F.3d 251, 255 (5th Cir. 1998) (finding that absence of counsel at juror-tampering hearing due to illness was harmless error); Vines v. United States, 28 F.3d 1123, 1129 (11th Cir. 1994) (in a multi-defendant case finding that absence of counsel during the taking of non-inculpatory evidence at trial is not prejudicial *per se*); Tucker v. Day, 969 F.2d 155, 159 (5th Cir. 1992) (finding that constructive absence of counsel at re-sentencing hearing was prejudicial *per se*); United States v. O'Leary, 856 F.2d 1011, 1019 (7th Cir. 1988) (finding that absence of counsel on appeal and failure to timely file brief was prejudicial *per se*); Green v. Arn, 809 F.2d 1257, 1263 (6th Cir. 1987)(finding the absence of counsel during the taking of evidence on the defendant's guilt at trial was prejudicial *per se*), vacated on other grounds, 484 U.S. 806 (1987), reinstated, 839 F.2d 300 (1988); Siverson, 764 F.2d at 1220 (finding the absence of counsel during jury deliberations

8

was harmless error); see also Hunte v. Keane, CV-97-1879(RR), 1999 WL 754273, at *8 (E.D.N.Y. Aug. 24, 1999) (finding that absence of counsel at suppression hearing is not prejudicial).

For purposes of this matter, the most instructive of these cases is Vines, although it is distinguishable. In Vines, the defendant agreed, on the record, to the absence of his counsel from 4:15 p.m. until the end of the day. Vines, 28 F.3d at 1125-26. Further, the trial court directed that the government present witnesses relevant to the defendant who was represented by counsel. Id. On appeal, without discussing possible waiver of right to counsel, the Vines majority determined that the attorney's absence was not at a critical stage of trial because no evidence directly inculpating the defendant was presented. Id. at 1128.

Vines, however, was convicted for possession with the intent to distribute and only that count was analyzed. Vines, 28 F.3d at 1125. He was acquitted on the conspiracy charge. Id. at 1126. In contrast, Russell was convicted for conspiracy to possess marijuana and cocaine with intent to distribute and conspiracy to launder money that was the proceeds of drug transactions. Where conspiracy is at issue, it is more difficult to draw the line where directly inculpatory evidence ends and indirectly inculpatory evidence begins. Evidence relevant to the establishment of the same conspiracy with which any conspirator

9

is charged is likely to be relevant as to any other co-conspirator. Furthermore, any evidence with respect to a co-conspirator that contributes to the establishment of an element of the conspiracy increases the perception that the other alleged participants are also guilty.

As the government builds its case against any co-conspirator, the conspiracy is more clearly established and all of the co-conspirators become more tightly linked. The government presented the evidence of Russell's money laundering immediately prior to the presentation, in the absence of Russell's counsel, of extensive evidence against Gallegos, Gil and Quirarte, Russell's co-conspirators in the money-laundering charge. The government established how the marijuana was imported, by whom it was paid for, where the marijuana was paid for, and who counted the money. To the extent that the government continued to build its case of conspiracy, even if against other co-conspirators, this inferentially increased the taint of guilt of Russell. Considering the fact that the evidence against Russell was circumstantial, subsequent events adducing the guilt of co-conspirators is especially condemning.

For Russell to be without counsel as the probability of his guilt increased during the government's presentation of evidence against his co-conspirators is unacceptable. Without counsel present in such circumstances, neither is the client in a

10

position to challenge the implicit connection between himself and his co-conspirators nor is counsel available to cross-examine the witnesses presented. The adversary process becomes unreliable when no attorney is present to keep the taint of conspiracy from spreading to the client. See Cronic, 466 U.S. at 659. Therefore, counsel Panetta's two day absence was at a critical stage of Russell's trial. Under Cronic, no specific showing of prejudice is necessary and Russell's conviction must be reversed. See id. at 659-60.

## III.

The court has considered the remainder of Russell's assignments of error, and concludes that they are either without merit or rendered moot by the disposition of this case.[2] For the reasons set forth herein, the conviction is REVERSED for trial error and REMANDED to the district court for a new trial.

---

[2] Furthermore, the court's decision to reverse does not decide whether or what type of "harmless error" analysis is the correct standard for evaluating the absence of counsel if it is determined that such absence is not *per se* prejudicial.

11