WILSON, Circuit Judge:
This appeal involves a defense attorney’s temporary absence from the courtroom at his client’s trial when inculpatory testimony was admitted into evidence and contributed to his conviction. Appellant Alexander Michael Roy (Roy) alleges that his criminal conviction was obtained in violation of the Sixth Amendment and the Supreme Court’s holding in United States v. Cronic, 466 U.S. 648, 659, 104 S.Ct. 2039, *1287 2047, 80 L.Ed.2d 657 (1984), which creates a presumption of prejudice and requires a new trial when counsel is absent during a “critical stage” of the trial. Because (1) Roy was a sole defendant during his criminal trial, (2) the afternoon session of Roy’s trial commenced while his counsel was actually and physically absent, and (3) during that absence, evidence directly inculpating Roy in a crime for which he was eventually convicted was presented to the jury, we conclude that Roy was denied counsel at a critical stage, and based on Cronic, we are required to reverse Roy’s conviction as to all counts of the indictment and remand the case to the district court for a new trial.
I.
Pursuant to a “reverse sting” operation conducted in conjunction with the Osceola County Sherriffs Office (OCSO), Detective Athena Ross of the Sumter County Sher-riffs Office (SCSO) placed an advertisement on Craigslist purportedly soliciting sex for two women. Roy responded to the advertisement, after which Ross, acting undercover, told Roy that the advertisement was for herself, a thirty-year-old woman named Denise, and her daughter, a thirteen-year-old girl named Torie. Roy, “Denise,” and “Torie” (played by a second undercover SCSO detective) discussed various potential sexual activities by email, telephone, and text message. Eventually, they arranged a meeting at a Waffle House restaurant in Kissimmee, Florida. Roy drove to the restaurant and entered the parking lot, but he drove away without ever parking his vehicle. OCSO deputies pulled him over and arrested him, finding condoms and lubricant in his pockets.
OCSO conducted two searches of Roy’s home, leading to the seizure of a desktop computer, a laptop, a thumb drive, and three compact discs, all of which contained photographs and videos containing child pornography. Detectives also found the text of online conversations Roy had with L.B., a minor with whom Roy had carried on a romantic relationship. L.B. was depicted in some of the pornography found on his computer, which Roy himself created. Much of the child pornography depicted other underage girls.
Roy was indicted by a federal grand jury in the Southern District of Florida on one count of enticing or attempting to entice a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b) (Count 1) and four counts of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2) (Counts 2-5). A motion to suppress the evidence seized during the execution of the warrants was denied.
During a portion of Roy’s jury trial, defense counsel was absent from the courtroom immediately following a lunchtime recess. There was no explanation for the absence in the record. Prior to the recess, the court had stated that the trial would recommence at 1:30 p.m. Instead, it started at 1:29 p.m. without defense counsel present; counsel did not arrive until 1:36 p.m. The record does not reflect any reaction by the court or the government either to counsel’s absence or to his late arrival, though the court reporter did note both in the transcript. During counsel’s absence, the government offered the following testimony from its computer forensics expert witness, Detective Charlie Longson of OCSO:
Q. Now, did you have occasion to find during your forensic examination a folder on the desktop computer named “My Pictures,” which would fall within the “My Documents” file that was on that computer?
A. Yes, I did.
*1288 Q. And within the “My Pictures” folder, were there other subfolders?
A. Yes.
Q. And how were they categorized within that general folder of “My Pictures”?
A. Those folders were categorized by date, the year first, month second, and the date third.
Q. And were you able to determine any folders that had — or contained notable images within them?
A. Yes. I did find folders with notable images.
Q. And what were — what was the first folder of concern that you found?
A. The first one I found was named “2006-03-11.”
Q. And would that folder have been created by a user of that computer? A. Yes, it was.
Q. And did you find any images within that folder?
A. Yes, I did. I found six images.
Q. And would you please describe the images to the ladies and gentlemen of the jury within that March 11, 2006, folder that you found?
A. These images are a nude white female who was bound to a table by her feet with rope. The subject was laid across the table and had her head covered with an orange cloth which was secured around her neck with silver duct tape.
Q. Were you able to determine forensically how those pictures had been taken?
A. Yes. They were taken with a Kodak v530 zoom digital camera.
Q. And were you able to determine forensically a date and time those images were taken?
A. Yes, I was. These were taken on March the 10th, 2005, at 6:49 p.m.
Counsel returned soon after this exchange and, upon his return, did not raise any objections. Direct examination of Detective Longson continued uninterrupted. Detective Longson later testified as to the identity of the individual portrayed in the photographs, L.B., as well as her date of birth: May 9, 1989. The jury found Roy guilty on all counts, and the district court sentenced him to life imprisonment.
Roy raises four claims on appeal. Of these, we address only the Sixth Amendment denial of counsel claim. Specifically, Roy contends that his counsel’s absence occurred during a critical stage of trial when inculpatory evidence was admitted against him and that, therefore, he is entitled to a new trial pursuant to Cronic, 466 U.S. at 658-59, 104 S.Ct. at 2046-47.
II.
“The claim that the temporary absence of trial counsel during the taking of evidence constitutes a Sixth Amendment violation presents a mixed question of law and fact and, as such, is subject to plenary review.” Vines v. United States, 28 F.3d 1123, 1127 (11th Cir.1994).
A criminal defendant is entitled to the “Assistance of Counsel for his defence.” U.S. Const, amend. VI. In Cronic, the Supreme Court “conclude[d] that a trial is unfair if the accused is denied counsel at a critical stage of his trial.” 466 U.S. at 659, 104 S.Ct. at 2047; see also Bell v. Cone, 535 U.S. 685, 695-96, 122 S.Ct. 1843, 1851, 152 L.Ed.2d 914 (2002) (listing the three bases for the Cronic presumption: (1) “complete denial of counsel,” including at a critical stage; (2) failure by counsel “to subject the prosecution’s case to meaningful adversarial testing;” and (3) “where counsel is called upon to render assistance *1289 under circumstances where competent counsel very likely could not”).
A.
Roy contends that he was denied counsel at a critical stage of his trial when the government recommenced direct examination of Detective Longson during his counsel’s absence from the courtroom. We must first decide, then, whether the portion of trial conducted in the absence of defense counsel was in fact a critical stage. Although there is no strict test or definition for a critical stage of trial, the Supreme Court, other United States Courts of Appeals, and our own precedent provide us with guideposts to help answer that question.
In Vines, we did not apply a Cronic presumption of prejudice when Vines’s lawyer was absent during the presentation of testimony to the jury. 28 F.3d at 1128. Vines was charged with possession of cocaine with intent to distribute and conspiracy to possess cocaine with intent to distribute. Id. at 1125. The district court excused Vines’s counsel on the first day of trial at 4:15 pm.[1] Id. at 1125-26. During his absence, two witnesses testified. Id. at 1126. One witness testified about the arrest of Vines’s co-defendant. Id. The second witness, who was part owner and operator of the warehouse where the shipment containing the cocaine was received, “simply testified about leasing the space.” Id. Vines was convicted of the possession charge but was acquitted of conspiracy. Id. On appeal from the district court’s denial of his 28 U.S.C. § 2255 motion, “we decline[d] to give birth to a rule that the taking of evidence is necessarily a critical stage of trial [and found] that no evidence directly inculpating Vines was presented during his counsel’s absence.” Id. at 1128. Because “no evidence directly inculpating [Vines was] presented while [his] counsel [was] absent, we decline[d] to hold that counsel was absent during a critical stage of trial within the meaning of Cronic.” Id.
Vines, however, does not control our analysis because counsel here was absent during the presentation of testimony directly inculpating Roy. Before counsel returned, the following evidence was admitted through the testimony of Detective Longson, a witness for the prosecution:
Q. And how were they categorized within that general folder of “My Pictures”?
A. Those folders were categorized by date, the year first, month second, and the date third.
Q. And were you able to determine any folders that had — or contained notable images within them?
A. Yes. I did find folders with notable images.
Q. And what were — what was the first folder of concern that you found?
A. The first one I found was named “2006-03-11.”
Q. And would that folder have been created by a user of that computer? A. Yes, it was.
Q. And did you find any images within that folder?
A. Yes, I did. I found six images.
Q. And would you please describe the images to the ladies and gentlemen of the jury within that March 11, 2006, folder that you found?
A. These images are a nude white female who was bound to a table by her feet with rope. The subject was laid *1290 across the table and had her head covered with an orange cloth which was secured around her neck with silver duct tape.
Q. Were you able to determine forensically how those pictures had been taken?
A. Yes. They were taken with a Kodak v530 zoom digital camera.
Q. And were you able to determine forensically a date and time those images were taken?
A. Yes, I was. These were taken on March the 10th, 2005, at 6:49 p.m.
That testimony, given during counsel’s absence, established the date on which some images at issue were created, that the folders in which they were contained would “have been created by a user of that computer,” and the content of those images. The district court’s instructions to the jury on the possession counts included the following:
The Defendant can be found guilty of [possession of child pornography] only if all the following facts are proved beyond a reasonable doubt: [(1)] [t]he Defendant knowingly possessed a visual depiction; [(2)] [t]hat the depiction was shipped or transported in interstate or foreign commerce by any means including a computer or that was produced using material that had been mailed, shipped, or transported in interstate or foreign commerce; [(3)] [t]hat producing the visual depiction involved the use of a minor engaged in sexually explicit conduct; [(4)] [t]hat the depiction is of a minor engaged in sexually explicit conduct; and [(5)] [t]hat the Defendant knew that at least one performer was a minor and knew that the depiction showed the minor engaged in sexually explicit conduct.
The evidence presented to the jury during counsel’s absence, therefore, provided a basis for conviction on those jury instructions. The testimony that “a user of that computer” would have created the folders containing the pornographic images supports the conclusion that Roy “knowingly possessed a visual depiction.” The identification of the date on which the images were created, when combined with Detective Longson’s later identification of the subject’s date of birth, and the description of the content of the images supported the third, fourth, and fifth elements — that the images “involved the use of a minor engaged in sexually explicit conduct;” that they were “of a minor engaged in sexually explicit conduct;” and that Roy “knew that [they] showed the minor engaged in sexually explicit conduct.”
Thus, this case is markedly different from our prior decision in Vines. Here, the government presented the jury with directly inculpatory evidence on a count for which Roy was ultimately convicted while his attorney was absent from the courtroom. In Vines, the government did not present evidence of Vines’s own wrongdoing, and he was acquitted on the conspiracy charge, severing any potential imputation of his co-defendants’ wrongdoing to him. 28 F.3d at 1126, 1128 (“Upon review of the record, we find that no evidence directly inculpating Vines was presented during his counsel’s absence. Where, as in this case, no evidence directly inculpating a defendant is presented while that defendant’s counsel is absent, we decline to hold that counsel was absent during a critical stage of trial within the meaning of Cronic.”)', cf. United States v. Russell, 205 F.3d 768, 772 (5th Cir.2000) (distinguishing the case presented, in which evidence directly inculpating only Russell’s co-conspirators was presented during counsel’s absence, from Vines because Russell was convicted of conspiracy, while Vines was acquitted of the conspira *1291 cy charge). Hence, we must decide whether the presentation of directly inculpatory testimony materially distinguishes this case from Vines and constitutes a critical stage of a criminal trial.
Whether a portion of trial is critical is a categorical question; it is not the unique facts of a particular trial that decide the issue but the nature of the stage. See Van v. Jones, 475 F.3d 292, 301-02 (6th Cir.2007) (emphasizing the “aceentu-at[ion of] the categorical nature of [the critical stage] inquiry”); Burdine v. Johnson, 262 F.3d 336, 347 (5th Cir.2001) (“To justify a particular stage as critical, the Court has not required the defendant to explain how having counsel would have altered the outcome of his specific case. Rather, the Court has looked to whether the substantial rights of a defendant may be affected during that type of proceeding.” (internal quotation marks omitted)); cf. Hunter v. Moore, 304 F.3d 1066, 1070 (11th Cir.2002) (concluding that closing argument is categorically a critical stage).
One working definition of a critical stage for purposes of Cronic is that set forth by the Sixth Circuit in Van after it considered a quintet of Supreme Court opinions as well as one of its own: whether “a reasonable likelihood that [substantial prejudice to the defendant’s rights] will arise from complete absence of counsel.” 475 F.3d at 313. The Supreme Court opinions on which Van relied hold that a critical stage arises when “[available defenses may be ... irretrievably lost, if not then and there asserted,” Hamilton v. Alabama, 368 U.S. 52, 54, 82 S.Ct. 157, 159, 7 L.Ed.2d 114 (1961), “where rights are preserved or lost,” White v. Maryland, 373 U.S. 59, 60, 83 S.Ct. 1050, 1051, 10 L.Ed.2d 193 (1963) (per curiam), “whenever necessary to assure a meaningful ‘defence,’ ” United States v. Wade, 388 U.S. 218, 225, 87 S.Ct. 1926, 1931, 18 L.Ed.2d 1149 (1967), where “ ‘potential substantial prejudice to defendant’s rights inheres in the ... confrontation and the ability of counsel to help avoid that prejudice,’ ” Coleman v. Alabama, 399 U.S. 1, 9, 90 S.Ct. 1999, 2003, 26 L.Ed.2d 387 (1970) (alteration in Coleman) (quoting Wade, 388 U.S. at 227, 87 S.Ct. at 1932), and when the stage holds “significant consequences for the accused,” Bell, 535 U.S. at 696, 122 S.Ct. at 1851. See Van, 475 F.3d at 312.
Consideration of these precedents, as well as the Sixth Circuit’s helpful standard, convinces us that Roy’s counsel was absent during a critical stage of his trial. It is clear that there exists “a reasonable likelihood that [substantial prejudice to the defendant’s rights] will arise from complete absence of counsel” during the presentation of directly inculpatory testimony to the jury. Van, 475 F.3d at 313. The absence of counsel during the presentation of inculpatory evidence used by the government to convict the defendant eliminates the opportunity to decide whether to lodge an objection and how to frame the objection, as well as the ability to conduct cross-examination. See Davis v. Alaska, 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (“[D]eni[al of] the right of effective cross-examination [is] constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.” (internal quotation marks omitted)). Indeed, a defendant may irretrievably lose available defenses and rights during direct testimony of a prosecution witness. See Hamilton, 368 U.S. at 54, 82 S.Ct. at 159; White, 373 U.S. at 60, 83 S.Ct. at 1051. The presence of counsel during the examination of an adverse witness is “necessary to assure a meaningful ‘defence.’ ” See Wade, 388 U.S. at 225, 87 S.Ct. at 1931.
The present case presents a circumstance substantially similar to the Sixth *1292 Circuit decision in Green v. Arn, 809 F.2d 1257 (6th Cir.), vacated and remanded on other grounds, 484 U.S. 806, 108 S.Ct. 52, 98 L.Ed.2d 17 (1987), reinstated on remand, 839 F.2d 300 (6th Cir.1988). In Green, a habeas corpus petitioner had been jointly tried with two other co-defendants. Id. at 1259. The co-defendants were represented by a separate lawyer than that of Ms. Green. Id. Green’s lawyer “was absent during a critical part of the afternoon” of the trial, and although co-counsel was present, Green’s lawyer was not.[2] Id. at 1259-61. During Green’s lawyer’s absence, co-defendants’ counsel conducted cross-examination of a prosecution witness. Id. at 1259. Green was convicted of kidnapping and gross sexual imposition. Id. Affirming the grant of a writ of habeas corpus, the Sixth Circuit determined that “[t]he presumption that counsel’s assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial.” Id. at 1263 (quoting Cronic, 466 U.S. at 659, 104 S.Ct. at 2047). The Sixth Circuit went even further to say that “if counsel entirely fails to subject the prosecution’s case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable”. Id. (quoting Cronic, 466 U.S. at 659, 104 S.Ct. at 2047). And when the Sixth Amendment claim is, as here, “the denial, rather than the ineffective assistance, of counsel, the criminal defendant need only show that counsel was absent during a critical stage of the proceedings in order to establish the constitutional violation. Absence from the proceedings is deficient performance as a matter of law, and prejudice is presumed.” Id. (emphasis added).
B.
The Fifth Circuit agrees that Cronic prejudice arises when the defendant is deprived of the presence of counsel during the presentation of inculpatory testimony to the jury. In Russell, the defendant was charged with and convicted of (1) conspiracy to possess cocaine and marijuana with intent to distribute, and (2) conspiracy to launder money that was the proceeds of a drug transaction. 205 F.3d at 769. Russell’s attorney was absent for two days of a joint trial while ill without Russell’s waiver. Id. at 769-70, 771. Counsel for a co-defendant volunteered to sit in for Russell’s counsel, and “[t]he district court instructed the government not to call any witness relevant to Russell” while Russell’s counsel was absent. Id. 769-70. During counsel’s absence, none of the testimony presented “directly implicated Russell,” but evidence relating to the conspiracy, which detailed the coconspirators’ attempts to launder money and import marijuana, was introduced. Id. at 770. Prior to the absence of counsel, the government had presented evidence “about Russell’s management of the distribution of marijuana operations and involvement in providing [a co-conspirator] with funds.” Id. The evidence presented during counsel’s absence therefore “flowed directly from Russell’s role in the money laundering conspiracy to the roles of [his co-conspirators] in the same money laundering conspiracy and the overall conspiracy to import and distribute marijuana.” Id. Russell filed a motion to vacate the sentence pursuant to 28 U.S.C. § 2255, which the district court denied. Id. at 769. Although declining to adopt a “bright line rule that the taking of *1293 any evidence at trial in the absence of counsel is prejudicial per se,”[3] id. at 771, the Fifth Circuit determined that counsel was denied at a critical stage and that the Cronic presumption applied because “Russell [was] without counsel as the probability of his guilt increased during the government’s presentation of evidence against his co-conspirators,” id. at 772. Russell’s conviction was reversed, and the case was remanded for a new trial. Id. at 773.
Here, as in Russell, “the probability of [Roy’s] guilt increased during the government’s presentation of evidence,” Russell, 205 F.3d at 772, and “[i]t is difficult to perceive a more critical stage of a trial than the taking of evidence on the defendant’s guilt,” Green, 809 F.2d at 1263. At Roy’s trial, evidence admitted to prove that Roy knowingly possessed photographs of a minor engaged in sexually explicit conduct was presented to the jury during his lawyer’s absence from the courtroom. The absence constitutes “circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.” Cronic, 466 U.S. at 658, 104 S.Ct. at 2046. We therefore find that Roy was deprived of his Sixth Amendment right to counsel at a critical stage of his trial and that Cronic requires a reversal of his convictions.
C.
Typically, where an appellant demonstrates constitutional error, an appellate court will not disturb a conviction if the government is able to show that the error “was harmless beyond a reasonable doubt.” Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Courts applying the Cronic presumption of prejudice where counsel was denied at a critical stage have reached varying conclusions regarding the applicability of harmless error review under those circumstances. Compare Siverson v. O’Leary, 764 F.2d 1208, 1217-19 (7th Cir.1985) (applying harmless error review to Cronic error), with Green, 809 F.2d at 1263 (failing to apply harmless error review to the facts before it). We, however, have previously held that “structural error exists where counsel is ‘prevented from assisting the accused during a critical stage of the proceeding.’ ” United States v. Arbolaez, 450 F.3d 1283, 1295 (11th Cir.2006) (per curiam) (quoting Cronic, 466 U.S. at 659 n. 25, 104 S.Ct. at 2047 n. 25). Structural error is not subject to harmless error review. See Arizona v. Fulminante, 499 U.S. 279, 309, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991) (Rehnquist, C.J., maj. op.) (“These are structural defects in the constitution of the trial mechanism, which defy analysis by ‘harmless-error’ standards.”); Vines, 28 F.3d at 1129 (“Trial errors are subject to harmless-error analysis; structural defects are not.”).
As we have stated, Cronic error is structural. “[A]ny deprivation of assistance of counsel constitutes reversible error and necessitates a new trial. Our rule does not include a harmless error analysis. Cronic and Strickland[4] make clear that where actual or constructive denial of assistance of counsel occurs a per se rule of prejudice applies.” Crutchfield v. Wainwright, 803 F.2d 1103, 1108 (11th Cir.1986) (en banc) (emphasis added) (internal quotation marks omitted). Cronic error necessitates a per se reversal. See Smith *1294 v. Wainwright, 777 F.2d 609, 616 (11th Cir.1985) (“Where, however, a petitioner demonstrates that circumstances surrounding his representation give rise to a presumption of prejudice, he will prevail.” (citing Cronic, 466 U.S. at 657 n. 20, 104 S.Ct. at 2046 n. 20)); Harding v. Davis, 878 F.2d 1341, 1345-46 (11th Cir.1989) (reversing after finding Cronic error without conducting harmless error review); Hunter, 304 F.3d at 1070 (“[Djenial of counsel at a critical stage ... warrants reversal without a specific showing of prejudice.”); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir.), cert. denied — U.S. -, 133 S.Ct. 2871, 186 L.Ed.2d 922 (2013) (“When [denial of counsel at a critical stage or other Cronic error] occurs, the reviewing court presumes the defendant was prejudiced and his conviction is in turn vacated.”).
Despite other Circuits’ willingness to apply harmless error review to Cronic error generally, no Circuit has applied harmless error review upon a finding that a defendant was deprived of his lawyer during the presentation of inculpatory testimony to the jury and that such deprivation violated Cronic. Although the dissent makes a reference to United States v. Kaid, 502 F.3d 43 (2d Cir.2007) (per curiam), Kaid has nothing to do with Cronic. The Second Circuit confined its review to “whether a defense attorney’s purported twenty-minute absence from the courtroom during a testimonial phase of a criminal trial constitutes ineffective assistance of counsel.” Id. at 44 (emphasis added). In other words, the Second Circuit worked under Strickland’s framework, not Cronic’s. Id. at 46-47.
In Green, the Sixth Circuit considered “whether harmless error analysis is appropriate where a petitioner demonstrates she was unrepresented by counsel for a critical period of time during the taking of evidence against her at trial.” Green, 809 F.2d at 1258. Green was tried jointly with two other co-defendants who were represented by separate counsel. Id. at 1259. Green was represented by her retained counsel. Id. Although her lawyer was present during a portion of the afternoon session of a day of her trial, he was absent during a critical part of the afternoon. Id. As the Sixth Circuit stated, “the present case is one where a harmless error inquiry should be foreclosed. It is difficult to perceive a more critical stage of a trial than the taking of evidence on the defendant’s guilt.” Id. at 1263. Further stated: “The absence of counsel during the taking of evidence on the defendant’s guilt is prejudicial per se and justifies an automatic grant of the writ ‘without any opportunity for a harmless error inquiry.’ ” Id. (quoting Siverson, 764 F,2d at 1217 n. 6).
The Seventh and District of Columbia Circuits have likewise determined that harmless error review is inappropriate when counsel is denied at certain critical stages. See Siverson, 764 F.2d at 1217 n. 6 (“We recognize that the lack of counsel at some critical stages may be considered prejudicial per se, and may result in automatic reversal of the defendant’s convictions without any opportunity for a harmless error inquiry.”); United States v. Decoster, 624 F.2d 196, 256 (D.C.Cir.1976) (en banc) (“Thus, where the defendant had no counsel at all at a critical stage of his trial, automatic reversal of his conviction is usually in order.”).
Harmless error review in a case like this one would be an exacting and problematic undertaking. First, as a reviewing court, we could not accurately determine whether and to what extent counsel’s absence prejudiced the defendant. See David A. Moran, Don’t Worry, I’ll Be Right Back: Temporary Absences of Counsel During Criminal Trials and the *1295 Rule of Automatic Reversal, 85 Neb. L.Rev. 186, 207-09 (2006). It would be difficult, if not impossible, for us as a reviewing court to discern, on a cold record, the reaction of the jury to the evidence presented and, therefore, to what extent counsel may have been able to react in a manner that would improve his client’s likelihood of acquittal had he been present in the courtroom. See id. at 207 (“During an ongoing trial, real-world trial counsel make crucial decisions based on the reaction of the jury to testimony, evidence, argument, and other courtroom proceedings.”). In other words, harmless error review under these circumstances either would give a defendant no meaningful opportunity to challenge his conviction for denial of counsel during presentation of inculpatory evidence or would require us to ignore relevant considerations simply because they cannot be discerned from the record. See id. at 209.
Upon his return to the courtroom, Roy’s counsel failed to lodge an objection to the admission of the evidence that he missed. Of course, he could not have known what evidence he missed, as he was absent. The contemporaneous objection rule ordinarily requires a party to object to the introduction of evidence at the time it is introduced. Puckett v. United States, 556 U.S. 129, 135, 129 S.Ct. 1423, 1428-29, 173 L.Ed.2d 266 (2009). Failure to do so subjects that evidentiary ruling to plain error review. Fed. R.Crim. P. 52(b); Puckett, 556 U.S. at 135, 129 S.Ct. at 1429. However, plain error review is inapplicable in this context. As Cronic notes, defense counsel’s presence is assured “not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial,” e.g., to ensure that someone is present to prevent the improper introduction of evidence. 466 U.S. at 658, 104 S.Ct. at 2046; cf. Mickens v. Taylor, 535 U.S. 162, 204, 122 S.Ct. 1237, 1261, 152 L.Ed.2d 291 (2002) (Souter, J., dissenting) (“Why excuse a judge’s breach of judicial duty just because a lawyer has fallen down in his own ethics or is short on competence? Transforming the factually sufficient trigger of a formal objection into a legal necessity for responding to any breach of judicial duty is irrational.... The objection requirement works elsewhere because the objecting lawyer believes that he sights an error being committed by the judge or opposing counsel. That is hardly the motive to depend on when the risk of error, if there is one, is being created by the lawyer himself....” (citation omitted)); Wood v. Georgia, 450 U.S. 261, 265 n. 5, 101 S.Ct. 1097, 1100 n. 5, 67 L.Ed.2d 220 (1981) (holding that it was appropriate to consider a conflict issue not raised below because (1) defense counsel might be hesitant to raise it; (2) the government had to have been aware of the error; and (3) the record indicated that there might be such an issue). The Fifth Circuit did not apply plain error review in Russell, 205 F.3d at 772-73, even though “[t]he district court did not speak to Russell or ask for his consent to the” absence, and counsel “did not question anything that took place in his absence,” id. at 770. Further, we have refused to subject Cronic error to plain error review even where counsel remained silent when the judge directed a verdict against the defendant, a blatant constitutional error. See Harding, 878 F.2d at 1345-46.[5] Therefore, plain error review is not applicable under these circumstances.
*1296 Where, as here, structural error has occurred, the entire trial is unfair and the convictions as to all counts are tainted. See Fulminante, 499 U.S. at 309-10, 111 S.Ct. at 1265. The Supreme Court has defined structural errors as those where the reviewing court “can only engage in pure speculation” about what the jury might have done; their consequences are “necessarily unquantifiable and indeterminate.” Sullivan v. Louisiana, 508 U.S. 275, 281-82, 113 S.Ct. 2078, 2082-83, 124 L.Ed.2d 182 (1993). Structural errors are “markedly different” from trial errors (which can be “quantitatively assessed”), and thus, structural errors “defy analysis by harmless-error standards.” Fulminante, 499 U.S. at 308, 309, 111 S.Ct. at 1264-65 (internal quotation marks omitted). There are some errors that courts can accurately measure and hold harmless. This is not one of them. Especially here, where the charges are interrelated and evidence relevant to one count may have influenced the jury as to others.
III.
We pause to address the concerns expressed by our dissenting colleague in his forceful dissent:
First, while maintaining that there was no Cronic error at all, the dissent suggests that even if counsel’s absence taints the conviction as to Counts 2-5, we can separate out the evidence as to each count. Therefore, Count 1, for which Roy received a life sentence, was unaffected by the evidence received during counsel’s absence as to Counts 2-5.
But the government asked the jury to do the complete opposite at Roy’s trial. Roy was charged in Count 1 with enticing or attempting to entice a minor to engage in sexual activity. Counts 2-5 charged him with possession of child pornography on his computer which, according to the government’s evidence, he viewed a couple of days before traveling to the Waffle House in Kissimmee, Florida, where his attempt to entice a minor allegedly occurred. As the government stated in its closing argument:
Well, we know where he went, ladies and gentlemen, and I submit to you we know what he was ultimately planning to do, because his interest starts a couple days before.
You’ll recall the evidence. He’s accessing his girl’s folder on the laptop, he’s accessing his Lily folder on the laptop.... All that adds up to is little girls, ladies and gentlemen. You got a teacher sitting here that’s interested in little girls, because that’s all he’s got saved in his collection. He’s got it all backed up so if anything ever crashes, he’s got it in disk form, he’s got it in thumbnail form. That’s what he’s interested in, and that wasn’t entrapment, because he was into little girls a long time before he ever showed up in Kissimmee, Florida.

You know it because that’s what he likes to look at on the Internet, as well.

Later in his closing argument, the prosecutor continued to invite the jury to consider evidence admitted as to Counts 2-5 in connection with Count 1 as well:
He was predisposed. You know that from all of these videos and pictures he likes to watch.
As Chief Justice Rehnquist wrote in Fulminante, a “structural defect affect[s] the framework within which the trial proceeds, rather than simply [acting as] an error in the trial process itself.... [Where structural error exists] a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.” 499 U.S. at 310, 111 S.Ct. at 1265 (internal quota *1297 tion marks omitted); see also Vines, 28 F.3d at 1129 (“[Structural defects ... involve deprivations of constitutional protections so basic that in their absence no criminal trial can be deemed reliable, nor any punishment fundamentally fair.” (citation and internal quotation marks omitted)). To examine the evidence separately as to each count when counsel has been denied makes little sense because we would have to speculate about what evidence the jury may have applied in its deliberations as to each individual count, especially in a case like this one, where the charges are interrelated and evidence relevant to one count may have influenced the jury as to others.
Next, the dissent suggests that this case should be remanded for an evidentiary hearing to determine the circumstances surrounding counsel’s absence from the courtroom during the presentation of evidence against Roy. Although Judge Boggs’s dissent in Green (which reflects an almost identical yet condensed version of the dissent that follows this opinion) made the same suggestion, the majority in Green “deeline[d] the State’s invitation to remand for an evidentiary hearing.” 809 F.2d at 1261. The majority found that “[although it may be that some absences by a criminal defendant’s attorney might be so de min-imis that there would be no constitutional significance, the instant record unequivocally demonstrates that [Green’s attorney’s] absence was not de minimis. In our view, the record permits but one conclusion: [Green’s] constitutional right to counsel was implicated by [Green’s lawyer’s] absence.” Id. at 1261-62. Contrary to the dissent, we do not state a blanket rule requiring automatic reversal on the occasion of any absence of counsel from the courtroom during the presentation of evidence against the defendant at his trial. But here, the absence of Roy’s counsel from the courtroom during the presentation of direct inculpatory testimony by a deputy sheriff who was the government’s computer forensic specialist expert witness cannot reasonably be considered a de min-imis constitutional violation.
In fact, Judge Boggs, the dissenter in Green, would seem to join the majority in this ease. As Judge Boggs concedes, “[t]he facts of this case are a long way from, for an extreme example, taking of direct testimony against a single defendant whose counsel is absent.” Id. at 1265 (Boggs, J., dissenting).
Our dissenting colleague next suggests that Roy’s counsel “may have deliberately taken advantage of his own tardiness and carefully avoided any attempt to correct the problem, hoping that he could have a get-out-of-jail-free card in his pocket for his client. If so, it worked.”[6] Further, the dissent says that counsel may have “deliberately engineered the whole thing” and that our decision today could invite misconduct by opportunistic counsel, which, according to the dissent, is prevalent in the three states of the Eleventh Circuit as reflected by statistics evidencing rampant lawyer misconduct in Florida, Georgia, and Alabama by criminal lawyers.
Our confidence in the integrity of lawyers, who are admitted to practice in our courtrooms as officers of the Court bound by rules of professional responsibility, satisfies us that our decision today will not go so far as to motivate them to place their licenses to practice law in jeopardy by, as the dissent suggests, strategically slipping *1298 out of the courtroom when the judge is not looking and when they think inculpatory evidence is coming, to invite reversible error in the event of a conviction. Nor does the parade of horribles imagined by the dissent permit us to disregard Cronic.
The dissent also maintains that judges are not like, in its words, “kindergarten teachers, [who] will be forced to keep an eye on their lawyer-children.” Contrary to that view, we are unpersuaded that United States District Judges should be excused from the less than onerous burden of ensuring that the defendant’s lawyer is seated at counsel table, next to his client, or is somewhere in the courtroom when the government seeks the admission of incriminating evidence that will be used by the jury to convict his client of a felony, resulting in life imprisonment. Especially in a trial with a single defendant who has a single lawyer.
We conclude that when the accused is deprived of his lawyer at a critical stage of his trial, there has been a denial of Sixth Amendment rights that makes the adversary process itself unreliable. The Constitution gives the defendant the right to “the guiding hand of counsel at every step in the proceedings against him.” Powell v. Alabama, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932). Accordingly, counsel’s absence during the admission of incul-patory evidence against Roy at his trial is “ ‘constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.’ ” Cronic, 466 U.S. at 659, 104 S.Ct. at 2047 (emphasis added) (quoting Alaska, 415 U.S. at 318, 94 S.Ct. at 1111).
Although we reverse and remand for a new trial, a reversal does not mean that the defendant goes free. Rather, Roy will be retried in accordance with the rules of evidence and procedure, and without constitutional error.
IV.
For the foregoing reasons, we reverse Roy’s convictions and remand for a new trial.
REVERSED and REMANDED.

. We did not decide whether Vines waived his right to counsel because, after determining that his counsel’s absence was a trial error rather than a structural defect, we decided any constitutional deprivation was harmless. Vines, 28 F.3d at 1129-31.

. Notably, the absence may have been as short as five minutes, as the government argued; Green asserted that it was nearly two hours long. Green, 809 F.2d at 1265 (Boggs, J., dissenting).

.Compare this with our conclusion in Vines: “[W]e decline to give birth to a rule that the taking of evidence is necessarily a critical stage of trial” where "no evidence directly inculpating Vines was presented during his counsel’s absence.” 28 F.3d at 1128.

. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

. Notably, in Harding, though the directed verdict was likely reversible plain error, see Rose v. Clark, 478 U.S. 570, 578, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986), we reversed for Cronic error, not for the directed verdict. See Harding, 878 F.2d at 1345-46.

. Counsel is so clever, says the dissent, that he may have deliberately arranged the services of another lawyer to argue this appeal rather than having to admit at oral argument that he orchestrated the entire Cronic violation. The dissent infers too much to support such a conclusion.