JILL PRYOR, Circuit Judge,
dissenting:
Despite our Court’s unanimous agreement that Alexander Roy’s Sixth Amendment right to counsel was violated when his lawyer was absent briefly during his criminal trial, collectively we have spilled a great deal of ink sorting out whether and why this violation does or does not give Mr. Roy the right to a new trial. A majority of this Court has decided that even though Mr. Roy’s lawyer’s absence during *1252 the taking of evidence directly probative of guilt violated the Sixth Amendment, this constitutional violation does not warrant a new trial because the error was harmless. I understand the appeal of the majority’s approach. On this record, I would not find it difficult to conclude that Mr. Roy suffered no prejudice from his lawyer’s brief absence from the courtroom. But the Supreme Court has told us not to look to the effect of the error in this case to determine whether a new trial is required. So I write to explain why I dissent from the majority’s decision.
In my view, because Mr. Roy had no counsel beside him at trial while a witness gave incriminating testimony against him, we must reverse his conviction and remand for a new trial.[1] The Supreme Court explained in United States v. Cronic that “if the accused is denied counsel at a critical stage of his trial,” such error is structural, meaning it is not subject to a harmless error analysis. 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Rather, prejudice is presumed. Id. Contrary to the position of a majority of the Court, nothing in Cronic suggests that counsel must be absent for a substantial part of a critical stage for the error to be structural or that structural error may be judged with reference to minutes, percentages, or proportions of a trial.[2] By my reading of Cronic (a reading I share with Judges Wilson and Martin), Mr. Roy’s lawyer’s absence, brief though it was, while the government was introducing evidence of his guilt meant that Mr. Roy was “denied counsel at a critical stage of his trial,” a structural error requiring reversal. Id.
I maintain this view even though were we to apply a harmless error analysis to the facts of this case, I would be inclined to agree with a majority of my colleagues that the absence of Mr. Roy’s counsel from the courtroom caused him no prejudice: counsel’s absence was very brief, particularly with reference to the trial as a whole; we know from the transcript what transpired in counsel’s absence and when he returned; and the testimony counsel missed largely was repeated upon his return. I believe that a new trial is required, however, because the Supreme Court has directed in no uncertain terms that when an error is structural, it is categorically so. A “case-by-case inquiry into prejudice” simply is inappropriate where structural error exists. Strickland v. Washington, 466 U.S. 668, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); see Neder v. United States, 527 U.S. 1, 14, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (describing structural error as “categorical”).[3] Regardless of how *1253 we couch it, any evaluation of facts specific to Mr. Roy’s lawyer’s absence necessarily is not categorical.[4] So, even though it’s tempting, we may not peek at those facts in determining whether the error is structural. See Cronic, 466 U.S. at 658, 104 S.Ct. 2039 (noting that structural errors are those errors that, as a category rather than individually, involve “circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified”).
The result Cronic dictates (and my dissenting colleagues and I would reach) reflects that “[t]he assistance of counsel is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty. The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not still be done.” Gideon v. Wainwright, 372 U.S. 335, 343, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (alterations and internal quotation marks omitted).
Considering that Mr. Roy’s case is the first this Circuit has seen where a sole defendant is left without counsel during the presentation of incriminating evidence, I think it’s fair to say such circumstances are rare. The majority worries, however, that “[bjecause there is no principled way to limit an application of Cronic to single-defendant trials, a holding in favor of Roy would have far-reaching effects”:
Whatever measures a judge takes ..., it will be practically impossible to prevent presumptive prejudice error in a large, multidefendant, long-running trial. See Green v. Arn, 809 F.2d 1257, 1265 (6th Cir. 1987) (Boggs, J., dissenting) (“If a reversal is mandated whenever counsel (even retained) is absent from the courtroom for any significant period, we make such an escape a sure ticket to a new trial. In multi-defendant cases, judges will be required to keep a continual head count ... lest cagey counsel be able to invoke this new rule.”)-.
Maj. Op. at 1159-60 (quoting United States v. Roy, 761 F.3d 1285, 1323 (11th Cir.) (Carnes, C.J., dissenting) (some internal citations omitted), reh’g en banc granted, opinion vacated, 580 Fed.Appx. 715 (11th Cir. 2014)). I am not as troubled by the burden on trial judges — nor do I believe it would be practically impossible — to ensure, even in lengthy multi-defendant trials, that each defendant is never left without a lawyer present.
Judge Rosenbaum points out that, as guardians sworn to protect the constitutional right of defendants to counsel in criminal trials, trial judges necessarily are chargéd with vigilantly policing that right. See Rosenbaum Op. at 1215-16,1222-23. In most every case, fulfilling this duty will not be onerous. That is because accompanying the duty to protect defendants’ right to counsel is the trial judge’s singular authority to control the courtroom, including the timing and circumstances under which the trial can proceed.
As Judge Rosenbaum observes, trial judges can and regularly do ask the lawyers for all parties whether they are ready before proceeding. See id. at 1222-23. In the case of a multi-defendant trial, perhaps the trial judge will have to read a dozen or so co-defendants’ names and confirm the presence of counsel for each one. Maybe *1254 this will take an extra minute or two at the beginning of the trial day and after each recess. I am not bothered by adding a few minutes to the trial day to ensure that each defendant in the courtroom has a lawyer present.
I am confident that trial judges can keep a lawyer for each co-defendant present throughout the taking of evidence. At the beginning of a multi-defendant trial, and during the course of its other instructions to counsel and the parties, the judge can easily pause to instruct the lawyers for the defendants that if any lawyer needs to leave the courtroom during the taking of evidence, with the result that her client would be left without a lawyer representing him during her absence, the lawyer attempting to depart must inform the court before leaving.[5] The trial judge can certainly warn that if a lawyer violates this instruction she will face sanctions, or worse.[6] See 18 U.S.C. § 401 (permitting a district court to punish by fine or imprisonment, or both, if an attorney disobeys the court’s “lawful writ, process, order, rule, decree, or command”).
If a lawyer speaks up and says he needs to be excused from the courtroom temporarily, the trial judge has choices available, none of which is likely to take a substantial amount of time or vary much from how courts ordinarily handle such situations. The judge could ask the lawyer to wait until a recess, briefly pause the taking of any evidence and await the lawyer’s return, or conduct a colloquy with the departing lawyer’s client to ensure that any waiver of the defendant’s right to the presence of counsel is made voluntarily and with full knowledge of his rights.
As I see it, any additional work on the part of the trial judge to ensure that each defendant always has one lawyer present in the courtroom to represent him during the taking of evidence almost never will be onerous. And if the burden is, on the rare occasion, onerous, let it be so: trial judges are sworn to protect the constitutional rights of the criminal defendants who stand trial before them. I can scarcely think of a more important duty than the protection of the right to counsel. If ensuring that right is protected takes an hour, three hours, or even a full day of a lengthy *1255 trial, I am comfortable that the burden on the trial judge is outweighed by the gravity of the fundamental constitutional rights of criminal defendants.
[[Image here]]
I respectfully dissent because Mr. Roy’s Sixth Amendment right was violated when he went without counsel while the jury heard testimony that directly incriminated him. I would reverse his conviction under Cronic and remand for a new trial.

. I follow the lead of my colleagues in limiting my analysis to circumstances in which the government offers incriminating evidence while a defendant’s lawyer is absent, as was the case here. I do not mean to suggest, however, that counsel’s absence during the taking of directly inculpatory evidence is the only circumstance in which the absence of counsel could amount to a constitutional violation. See infra note 2.

. I note Judge Martin’s observation that the Supreme Court’s inclusion of proceedings beyond the trial itself in what constitutes a "critical stage” reflects an expansive view of the denial of the right to counsel for which prejudice is presumed, not a narrower one. See Martin Op. at 1249-50.

.I find helpful Judge Wilson's discussion of the Supreme Court’s recent decision in Williams v. Pennsylvania, - U.S. -, 136 S.Ct. 1899, 195 L.Ed.2d 132 (2016). Williams concerned the failure of a judge to recuse on account of a conflict rather than the absence of counsel, but both can be structural errors, so in that sense the case is instructive. In Williams, as Judge Wilson explains, the Supreme Court held that the judge’s failure to recuse was structural error, requiring reversal and a new appeal, even though the Court had ample reason to conclude that the result of the appeal would have been the same without the error. See Wilson Op. at 1246-47. If in deciding whether the error was structural the Supreme Court had engaged in a case-by-case (rather than categorical) inquiry into whether *1253 the effect of the judge's failure to recuse was known or could be determined, the Court most likely would have found no structural error.

. Of course, in an absence of counsel case, to determine that structural error has occurred it may be necessary for a court to find facts related to whether counsel was absent and whether inculpatory evidence was presented during the absence. But once a court answers “yes" to these preliminary questions, no case-by-case determination is permitted.

. I agree with the majority that the presence of lawyers for co-defendantS' — even when a co-defendant’s lawyer agrees to cover for an absent defense lawyer — is irrelevant to the structural error inquiry unless the defendant knowingly and voluntarily waives the right to the presence of his own lawyer. See Maj. Op. at 1158-59; Olden v. United States, 224 F.3d 561, 568-69 (6th Cir. 2000) (holding that defendant was denied counsel even though his lawyer asked another defendant’s lawyer to "take notes or whatever” in the defendant’s lawyer’s temporary absence); United States v. Russell, 205 F.3d 768, 769-72 (5th Cir. 2000) (reversing conspiracy conviction under Cronic when a lawyer representing a co-defendant agreed to "sit in” for the defendant's absent counsel); Green, 809 F.2d at 1259-63 (upholding reversal of conviction of Green, one of three defendants at trial, due to her lawyer’s temporary absence during the cross-examination of a witness even though Green’s lawyer and Green’s co-defendants' lawyer had agreed that the co-defendants’ lawyer would do the cross-examination on behalf of all defendants).

. And given that many defense lawyers are repeat players in the courts in which they practice, the threat of sanctions (and any accompanying reputational harm) likely would suffice to prevent attorney misconduct. I acknowledge the possibility of intentional attorney misconduct in an attempt to create error, but I have enough faith in our colleagues at the Bar to believe that if it occurred at all, it would be exceedingly rare and could be dealt with using all the means at the courts' disposal. The remote possibility that the rare lawyer might abuse the system in this way does not demonstrate that my interpretation of Cronic would lead to absurd results. Neither should it otherwise guide or influence our jurisprudence.